## HACKNEY v. YORK. (No. 1839.)

Court of Civil Appeals of Texas. Beaumont. June 6, 1929.

Ross, Wood, Lawler & Wood, of Houston, for appellant.

John B. York, of Houston, for appellee.

WALKER, J. The propositions involved in this appeal are: (a) The power of a corporation, after its charter has been granted, to employ an attorney to represent it in matters connected with its business and to agree with the attorney that the value of his services are to be credited against his stock subscription account; (b) where such a contract has been made and the service rendered and accepted, but the corporation becomes insolvent before the value of the service has been adjusted, and suit is filed against the attorney, after the insolvency of the corporation, for his unpaid subscription, his right to have the value of his service set off against the subscription account; and (c) the right of an attorney to recover against a corporation the value of his legal services for preparing its charter and other incorporation papers and for legal advice in connection therewith, where the statute casts no such burden upon the corporation and there is no provision in its charter authorizing it to pay such expense.

The facts, briefly stated, are as follows:

Appellee was a practicing lawyer at the bar of Harris county. He, together with F. P. Goff, S. D. Simpson, and A. L. Jacobs, formed and subscribed for all the stock in the Mutual Construction Company, Inc., domiciled in Houston. No other person ever owned any stock in this company. Goff, Simpson, and appellee were named directors when the company was chartered, and no other directors were ever named. Goff was made president and general manager, and appellee was named secretary. Appellee subscribed for $1,900 of the stock of the company prior to organization and paid 50 per cent. of his subscription in cash. At the time the charter was granted, or immediately thereaft-

er, Goff, as president and general manager, and Simpson, as one of the directors, in conference with each other, with the knowledge and consent of A. L. Jacobs, the other stockholder, entered into a contract with appellee, whereby he was to attend to the legal business of the corporation and the value of his legal services was to be credited upon his unpaid stock subscription account, which amounted to $950. He was to be paid no money until the value of his services, discharged in full the subscription account. The charter purpose of the corporation was real estate investments, and the services of an attorney were absolutely essential to the proper conduct of its business. When this contract was made the directors were not in session as directors; that is, they had not called a meeting of the board of directors, and the contract was never called formally to the attention of the board of directors when sitting as such. The business of the corporation was not successful. Goff resigned as president and general manager after a few months service, and his place was not filled on the board of directors. The business was then operated by appellee and Simpson, as the remaining directors. They did not operate it very long until it became wholly and notoriously insolvent. Appellant brought suit against the corporation and secured judgment for $6,227. Execution upon this judgment was returned nulla bona. Appellant then instituted this proceeding under the statute to recover judgment against each of the stockholders for their unpaid stock subscriptions. Simpson was dismissed from the suit, and judgment by default was taken against Goff and Jacobs for the amount sued for. Appellee answered by general denial and specially pleaded his contract of employment as above set out, itemizing the several sums due him, and pleaded an amount in excess of his unpaid stock subscriptions. On trial to the court his defense was sustained, the reasonable value of his services fixed at $864.50, which was credited upon his subscription account, and judgment awarded appellant for the difference between $864.50 and $950. From this judgment appellant has duly prosecuted her appeal. She concedes that all transactions had between appellee and the company were in utmost good faith. She does not question the value of the services as found by the court, and concedes that the services were performed under the contract pleaded by appellee, and that this contract was made by Goff as president and general manager of the company, that Simpson participated in the contract, and that it was made with the knowledge and consent of the remaining stockholder, Mr. Jacobs.

The court erred in allowing appellee recovery for the fee of $50 claimed by him for preparing the charter and other papers necessary for the incorporation of Mutual Construction Company, Inc. It was clearly held in Weatherford, M. W. & N. W. Railway Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837, that the fee of an attorney "in advising as to the articles of incorporation and in correcting and preparing this paper" could not be charged against the corporation after the filing of its charter, in the absence of a provision in the statutes or in the articles of incorporation casting this burden upon it.

That appellee's contract with the company was not made by the board of directors, sitting as such, nor afterwards ratified by the board, did not render it null and void. The president and general manager of a corporation has the power to employ an attorney to render services necessary to the proper management of the business. (Bankers' Trust Co. v. Cooper et al. (Tex. Civ. App.) 179 S. W. 541. Since the contract of employment was valid, the corporation was not inhibited by the Constitution or the statutes from agreeing with appellee that the value of his services should be credited against his unpaid stock subscription. There was no showing that the stock covered by this subscription or any portion of it had been issued to appellee. He had the right, under the law of Texas, to pay for this stock prior to its issuance in "money paid," "labor done," or "property actually received." Article 1353, Rev. St. 1925; also article 1308. There is no intimation in the statutes nor in the decisions of this state that the "labor done" must be one single act. Appellee owed for his stock. The company needed his services. They entered into a mutual contract that such services should be performed and the stock subscription credited with the value thereof. The method of compensating appellee as thus agreed upon was entirely within the law.

But if that point be conceded, appellant says, since appellee and the company did not agree upon the value of the services prior to insolvency, the courts are without power to fix such value after insolvency. This proposition is denied. The contract being upon a quantum meruit basis, and the parties not having agreed upon the amount thereof, the very office of the courts was to fix the value of the services rendered by appellee within the terms and upon the conditions of his contract.

Appellant's concluding proposition is that to allow appellee the value of his services would be to award him a preference, which she says is denied him, both at law and in equity, citing in support of her proposition among other decisions, Cochran v. Monteith (Tex. Civ. App.) 221 S. W. 1055, where the rule contended for by appellant is announced and where it is said: "The decisions upon this proposition appear to be unanimous." But the facts from which this rule is deduced are not the facts of this case. We do not have before us, as a matter of law, the balancing of the stock subscription against the account for legal services. In other words,

these facts do not raise at all the issue of set-off. On the contrary, the issue is one simply of recognizing and enforcing a specific contract that the services rendered should be so compensated. Witt v. Nelson (Tex. Civ. App.) 169 S. W. 381, involved to some extent the legal proposition before us. There Nelson advanced funds to his corporation necessary to keep it a going concern, and after its insolvency, when he was sued for his unpaid stock subscription, asked credit for the amount so advanced. Discussing his right to this credit the court said: "There can be no doubt that this would be so had he at the time such advancements were made, or prior thereto, made a contract with the corporation to that effect." In that case, independent of the issue of contract, the court allowed Nelson his credit on the ground that the funds advanced were necessary and essential to maintain the life of the corporation, and that the creditors were given the benefit thereof. However, we are satisfied to rest our judgment entirely on the ground of contract.

The judgment in favor of appellee for the $50 charter fee is reversed and here rendered in favor of appellant. In all other respects the judgment in favor of appellee is affirmed.